Mr. Still pled guilty to being a prohibited person in possession of a firearm and ammunition under 18 United States Code Sections 922G and 924A2. He pled guilty conditioned on the right to raise the two general issues that his appeal presents, that is, the District Court's denial of his ability to pursue a justification defense at trial, and also the District Court's sentence. Subject, of course, to the Court's questions and interests, I intend to focus my comments today on the issue of the justification defense, because that's most important to Mr. Still, and I think it's probably most important to this Court's jurisprudence going forward. Now, the District Court made the decision to exclude Mr. Still's justification defense after the government filed a motion in Lemonade just before trial. The District Court held a hearing, accepted proffers from both parties on their versions of the events, and made its ruling. At the threshold, I do think there's some question as to this Court's standard of review. The government citing the Lucre case indicates that this Court will review for abuse of discretion the decision to exclude this defense. I believe the appropriate standard is de novo. It's based on Hudson, Poe, and L. Alleman, all cases that are cited in the brief. De novo seems to be the appropriate standard of review here, because although the government filed what it styled a motion in Lemonade, ultimately the District Court's decision actually didn't address evidentiary issues, but rather whether it was going to be willing to submit a jury instruction on this justification defense. In fact, the District Court said that it expected the same evidence may be relevant to an intent defense, which I'll address later on. So, when dealing with the issue of whether an affirmative defense can be raised, that's typically de novo review, and that's the appropriate standard here. The parties hotly dispute the circumstances underlying this case, of course, but there are things that are not subject to dispute. The main event in this case was an altercation between Mr. Still, who was 69 years old at the time, and his son-in-law, an individual named Devin Tyson. It arose after Devin's mother, Mr. Still's common-law wife, Kim Tyson, was jailed for committing a domestic abuse against Mr. Still. This dispute happened at the apartment complex where Mr. Still resided. Devin Tyson began this dispute in an apartment above Mr. Still's, came down to Mr. Still's apartment, entered the apartment against his will. There's a dispute as to whether Mr. Still had this firearm, the loaded shotgun, in advance of the dispute, or whether Mr. Tyson brought it to the altercation. Nonetheless, it came to pass that Mr. Tyson was throwing large rocks at Mr. Still. Mr. Still shot Mr. Tyson, and Mr. Tyson died. From there, Mr. Still left the scene with the shotgun immediately, traveled 8 tenths of a mile to his relative's residence, Mark Jones, and disposed of the shotgun. Now, as I said, the district court decided this issue after a hearing at which it accepted proffers from both parties. I think it's important to understand what standard the district court was to apply at the time it decided this issue. The Hudson case from this court does a good job of outlining that. But a district court is required to allow a defendant to pursue an affirmative defense so long as there's some evidentiary basis for it, no matter if it's weak or no matter if the government's version of events seems more credible to the district court. The district court is also obligated to accept the defendant's proffer as true. The district court honored that standard, at least to some degree, by ruling on this issue based on the undisputed fact that Mr. Still left the residence immediately after the shooting and traveled again to his relative's residence, took the gun with him, left the gun with the relative. But the district court's error was, in making the decision based on that fact, was it decided as a matter of law that that was not a reasonable option for Mr. Still and that he should have done something else and that he was not in sufficient danger to support a justification defense after the shooting. The problem is, with the unique facts of this case, the district court didn't identify, and I'm not aware of any other option that would have been objectively and obviously more reasonable for Mr. Still after the shooting. And that's unlike several of the cases that the government cited in its brief focusing on the defendant's conduct after, in the government's sense of things, the emergency faded. In the Stover case, for example, cited in the briefs, the defendant there got possession of the gun during an altercation, the assailant ran off, the defendant waited for a while, 5 or 10 minutes, actually dispossessed himself of the firearm, left, came back and repossessed the firearm before police came. And this court said, well that's unreasonable, he didn't need to come back and repossess the firearm. Under that circumstance, the emergency had faded. In the Poe case, the defendant tried to bring a justification defense based on the fact that he had an altercation with a significant other and that he had the gun because of that, but the problem there was the defendant kept the gun overnight until police found it. Here, the really unique factor here is that the altercation didn't necessarily end with Devin Tyson's shooting because there were other people present, including the two people who came into Mr. Still's apartment without authority with Mr. Tyson. And Mr. Still could not have reasonably remained in the apartment with the gun because those people were still there. He couldn't hold them hostage, obviously, he couldn't stay with the gun under those circumstances, and he couldn't dispose of the gun at the scene for the same reasons. Those people were still present. He couldn't dispose of the gun immediately outside the apartment building, that would have been unreasonable. The government relies on the fact, the alleged fact, that there was a police station that was marginally closer to Mr. Still's residence than Mr. Jones' residence. But the problem is, there's nothing in the case law to suggest that Mr. Still is charged with having that knowledge that the police station was there. And there's no evidence as to what would have happened had he done that. He would have remained in possession of the firearm for that entire period, so it wouldn't have changed the amount of time that he possessed the firearm, and really wouldn't have changed the circumstances whatsoever. So that is the overarching problem, is there just wasn't a good option for Kenneth Still after the shooting happened. And traveling only eight-tenths of a mile to dispossess himself of the firearm, at the same time he drops off the children who were present at the scene, isn't necessarily an objectively unreasonable option. It may have been... Hold on a second, is that the test, whether his option was reasonable, or is the test whether he had some other reasonable option that would allow dispossession? I thought it was the latter. And that's true, and I'm being inarticulate about it. The problem is, there is no reason that you could necessarily, as a matter of law, say was more objectively reasonable than what he did. Because there were no good options under these particular facts. There were things that he could have done that would have been objectively unreasonable. For example, had he traveled from Council Bluffs to Des Moines with the gun, and dropped it off with a relative there, that would have been objectively unreasonable. But the problem here is not much time passed between the time of the shooting and when he dispossessed himself of the gun, and there's no alternative that you can say, as a matter of law, was objectively better than what he did. As far as... Why couldn't he just have discarded the gun somewhere outside of the apartment? Even if you accept that the two guys with Still were a risk to him, why couldn't he have removed himself from them, and then discarded the gun before he drove to the other residents? Well, it's unclear where he could have safely discarded the gun under the circumstances. With the other people present at the immediate scene, and the record's unclear where exactly they went after the shooting. But, you know, if you drive, say, Mark Jones' residence was 8 tenths of a mile away. If you drive 4 tenths of a mile away and discard the gun somewhere in public, I would submit that's not a reasonable option, because that's dangerous just to discard a gun in public. So I think that it's just not a reasonable thing for him to do, just to discard a gun without considering other people around him and the danger to the public. So the reasonable thing to do would be leave it with a relative where it's not going to be picked up by somebody who's chasing you. The Powell-Lello case from the 3rd Circuit that's cited in the brief is the most factually similar case to Mr. Still's. In that instance, the defendant got into a bar fight. He somehow came into possession of a firearm and used that to ward off the threat. What I think is especially interesting about Powell-Lello is an argument could be made that the defendant's response after that immediate emergency, in that case he ran from the cops and claimed that he didn't know it was a cop, thought he was still in danger, seems more unreasonable than what Mr. Still ultimately did by taking the gun to Mr. Jones' residence. Yet the 3rd Circuit said that he could pursue the justification defense under those circumstances. I believe what underlied part of the District Court's errant reasoning was its misunderstanding as to the elements of a 922G offense. As I said earlier on in my argument, the court didn't necessarily say that Mr. Still couldn't present the evidence of his version of offense surrounding the shooting in the immediate aftermath. What the court said was he could not have a jury instruction on this affirmative defense of justification, but the court expected that same evidence may be relevant to the element of intent. The problem is that 922G and its companion provision, 924A2, do not provide for an element of intent. In other words, the government does not have to prove beyond a reasonable doubt that the defendant intended to possess a firearm or that he willfully possessed a firearm. The mens rea that's required, and it's clear from 924A2, is knowing possession of a firearm. So I think the District Court tried to, in effect, split the baby by saying, well, Mr. Still can bring in this evidence, does not get a justification defense, but can raise this on intent, but that left him in a difficult position because there is no element of intent to this particular crime. So that addresses the issue of what happened after the shooting. I'd submit it's pretty clear, based on Mr. Still's proffer of the events leading up to the shooting, again, accepting what he said as being true, that that would support a justification defense. If it really were true that Devin Tyson brought a gun to the altercation, Mr. Still got it from him, and Mr. Tyson still posed a threat to him by throwing large rocks at him, even though Mr. Still had a firearm. That's certainly a risk of danger to Mr. Still's life and would have been a good basis for a justification defense. The court should use this opportunity to recognize the general availability of a justification defense in 922G cases. To this point, the court has ruled on the particular facts of any given case and determined in each case that the defendant didn't have an evidentiary basis to pursue the defense, but the court has not said explicitly that 922G allows for the common law affirmative defense of justification. I cited the many circuit court cases in my brief at page 22, allowing for this defense and other circuits. I also think it would be consistent with Supreme Court case law, where the Supreme Court has at least assumed that even with statutes that don't provide explicitly for a justification defense, that that common law defense is still one a defendant can pursue. In particular, the Bailey case, which deals with escape under 751A, and then the Dixon case, which deals with other provisions of section 922, the firearm laws. Moreover, this would, because 922G and 924A2 only provide for the mens rea of knowing, it would avoid absurd results if there were, you can imagine, cases even more compelling than Mr. Stills, where a felon had to grab a gun to save civilization. Obviously, it would be an absurd result if that defendant were held federally criminally liable for that. Allowing for a justification defense in exceptional cases would avoid those absurdities. Unless the court has any questions, I would reserve the remainder of my time for rebuttal. Very well, you may. Thank you for your argument. Mr. Duffy, we'll hear from you. May it please the court. Michael Duffy on behalf of the United States. I'll begin, your honors, today by starting where Mr. Hansen began, which is the standard of review. He correctly stated that the government's position is that, like the circumstances in the Lucre case, the standard of review would be abuse of discretion on the granting of the government's motion in limine. The difference between Lucre and Hudson is the procedural stage at which the issue was decided. Here, we have a motion in limine hearing shortly before trial, where the parties offer proffers of what they would expect the evidence to be. Whereas in Hudson, we have the end of the case where it's essentially about to go to the jury, and they're deciding what would be the correct instructions to provide to the jury. And those are two very different circumstances, which is why we have a different standard of review. What's the difference? Isn't it a legal issue in both cases? Whether the evidence is proffered or the evidence is presented is sufficient to warrant the instruction? Wouldn't it be a legal issue either way? Respectfully, your honor, the government submits that where it's proffered, the court has no choice but to accept the defendant's proffer as true, as Mr. Hansen pointed out, no matter how dubious it is. But by the end of the trial, there would be facts in the record, and the court could apply its common sense to the factual record, which could then be reviewed, that factual record could then be reviewed de novo by this court. So in this instance, it would just be the question of whether the district court abused its discretion by looking at the proffer and applying it as if the court would believe that, and then deciding as a matter of law whether it would be appropriate to proceed with that. That's the government's position on the standard of review, your honor. I don't understand what discretion you think the judge is exercising if he's just deciding the legal question whether on the proffered record the defense is available. Correct, your honor, and I understand. The government's position would be that the district court would be able to look at what the defendant proffered, but would also be able to use its discretion in determining what would be reasonable under the version of events that would be proffered by the defendant. So the district court would be exercising its discretion in that way and how it applied those circumstances to the law, which would be different than a de novo review where you have essentially a firm record to review. That's the government's position on that, your honor. What was the reasonable alternative that you think still had to dispossess himself of this gun after the shooting? So certainly at that point, your honor, where you're talking about, and this is what the district court focused on with regard to the third element, the reasonable alternatives. The first thing is that it's undisputed that at the moment that right after the shooting occurs, the victim in this case is laying on the ground with a mortal wound to his face from the 12-gauge shotgun, laying on the floor by the outer door of the apartment building, and Mr. Still is through the outer door inside of his own apartment, standing there with his open door. So at that point, the reasonable alternative is to close the door and lock it and call the police. And certainly in this case, your honor, there's no proffered evidence or a version of events from the defense that he was somehow unable to call the police from inside of his own apartment. It was reasonable for the district court to look at that as a reasonable alternative for the court to say that the court could understand that the defendant would have knowledge of the number 9-1-1 as much as in 2018 would have had access to a working telephone inside of his apartment. Well, counsel, but I mean, he would not have, Judge Collins asked, what his options were for dispossessing himself of the firearm. Under your hypothetical there, he still possesses the firearm, doesn't he? He would be in possession of the firearm at that point, but he would be waiting for the police to arrive to dispossess him of the firearm, which would be a reasonable alternative to getting in the car and driving it where law enforcement doesn't recover the firearm. The reasonable alternative is to try to get that firearm in the hands of the police as soon as possible. So there's two ways to do that. One is for the defendant to stay where he is and ask law enforcement to come to him, or he can leave and go to the police station and deliver the firearm to them. He does neither of those things. Is turning over the shotgun to the police a critical element of dispossessing himself of the firearm? Or if he had thrown it immediately after an alleged act of self-defense in the apartment, locked the door and fled, hadn't he immediately dispossessed himself? And then the issue of justification can go to the jury. Even if he didn't report himself to the police immediately. Right, the point would be to dispossess himself of the firearm as quickly and as reasonably as possible, as I understand it. And so in that instance, if he left the firearm behind and closed the door and then fled, that would be a more reasonable alternative than what he did, which is flee with the firearm. But of course he didn't do that. So as the court's pointing out, that's an alternative that would be reasonable, or certainly more reasonable than what he actually did, in which there's no dispute about that. Mr. Hanson said that the victim had forced his way into the apartment, accompanied by these two other guys. I thought you just said that after the shooting, nobody was inside except for Still. What are the facts? Is there a dispute on that, or are you taking the facts in the light most favorable to the defense? I don't think there's any dispute, Your Honor, that at the moment of the shooting, Mr. Still was alone in the apartment with the door open. And I believe if you look back at the proffer from the defense, both in the transcript and at District Court Docket 50 in the defendant's brief there, they described in detail that under their version of the events, with Mr. Still taking control and possession of the firearm away from the victim, which was his version, he was able to push them outside of the apartment. And so that's the point where every time that the victim would go outside that outer door and pick up a rock and come back, there's nobody else in there except for Mr. Still. So your point is, if the decedent is outside, the other two guys are outside, the defendant has the gun, you think he can keep them from entering and lock the door and do something at that point, huh? Well, and certainly that's correct, Your Honor. It certainly is our position. We think the District Court was correct in deciding that certainly after the shooting, there was no reason that he couldn't have the alternative of closing the door and calling the police. But we would also add, the government would submit, Your Honor, that even before the shooting took place, every time that the victim would have gone outside the building to pick up a rock, which he did three times, that's an opportunity that Mr. Still did not take to close the door and call the police. At that point, he's got the gun, everybody's outside the apartment but him. There was no reason why he couldn't do that. And there was nothing proffered at the hearing that would tell the District Court that Mr. Still was somehow unable to do that, unable to secure the door, or unable to call the police. So it's reasonable for the District Court to look at that situation and say that he had reasonable alternatives other than continuing to engage with the victim, ultimately shooting him, and then running off with the firearm. But I would also add, Your Honor, as to the first element of the test, there is no evidence, even under taking Mr. Still's version of the events as true, there is no evidence that there was a threat in this case. Because even though, if you look at what the defense said at the hearing, even though they said that the person that was with the victim was in the apartment, there's no evidence that a threat was mentioned by that person. It's just that Mr. Still thought that he might jump on his back. He thought that after the victim was shot, he thought that the victim might be able to harm him, or that the friends that were there might be able. And when the District Court looks at that, the District Court properly looked at the fact that whether that fear was reasonable. And that fear was not reasonable in this case, because the victim was mortally wounded and laying on the ground. And at that point, he's laying on the ground with this terrible wound to his face, so there's no reasonable way that anybody would think that that person was a threat to anybody. And secondly, there were no threats that anybody other than the victim would have made any threats to harm Mr. Still, much less threatened to kill him, such that it would rise to the level to meet the standard of justification. This is a generalized fear. This is not a specific threat. And that's not enough. If you can't meet that element, then that's not enough to proceed, which is why the District Court correctly excluded that defense. I would also point out that once the defendant left the residence and is in the car, he could have gone to the police station. Now, my friend Mr. Hanson mentioned that there was no evidence that Mr. Still knew where the police station was. But there's certainly, number one, there's no evidence in his proffer that he did not know where the police station was, and he did not know how to dispossess himself of the firearm. But more importantly, this is the police station that there's no dispute about that he turned himself into, eventually. So what we have, as far as the timeline goes in this case, is he leaves the house with the gun. He goes to the nephew's house, leaves the gun there. He goes to another friend's house and waits there. Then he comes back to the nephew's home. The nephew tells him that the gun is gone, and only after that does he walk to the police station from the nephew's house. And there's no dispute about any of those facts. So certainly, the defendant knew how to get to the police station to either dispossess himself of the firearm in a more objectively reasonable manner than the unreasonable manner in which he did, but also to show, as the other cases look at, reporting the crime to, reporting the issue to law enforcement instead of showing an effort to conceal his role, conceal the firearm, and those kinds of things. So based on those undisputed facts, in this case, the district court was correct in deciding that there was no way that the defendant could show, as a matter of law, that he was under a threat or that he did not have reasonable alternatives then to what he did. So in that case, the granting of the government's motion in limine was correctly decided by the district court. And unless the court has any other questions about the government's position on the justification defense, I will just briefly address the sentencing issues. Just so I'm clear on the record on this motion in limine, is the only record on the ruling, the transcript, the oral ruling from the judge? There's no written order, is that right? That is correct. The district court ruled from the bench, and so the transcript is the only statement from the court on the motion. Before you go to the sentence, is it the government's position that the question of reasonability is never a question for the jury? Certainly, if you accept the defendant's position is true and there would be some dispute about whether the defendant was under a threat or the fact that there was a reasonable alternative, there would be instances where a jury would look at that. But the district court's in a position as looking at that to say, are there reasonable alternatives? And the district court in that instance is just applying common sense to the facts as submitted by the defense. So in this instance, it would not be appropriate for it to go to the jury or even be presented at trial because the district court, in looking at this as applying common sense to the law, it's so clear that the defendant should have called the police and that there is no evidence of any threat that there would be nothing for the jury to consider beyond that. So at that point, we would say the district court was correct in doing so. In thinking about Justice Holmes' famous dictum, detached reflection is not required in the face of an uplifted knife, your answer would be there was no unlifted knife, and not only that, there had not yet been a thrown stone. At what point did the threat to the defendant's safety become apparent to him? That's the matter that's disputed. So in the context of the justification defense, the evidence, the proper version of the events by the defendant would be that he took the firearm away from the victim, but certainly the government and the record has evidence in it later on for sentencing that showed that that was not the case, that the defendant had the firearm much earlier before that. I didn't understand your answer to Judge Wallman's first question. The question was, is the government's position that reasonableness is never a question for the jury? I couldn't understand your answer, whether you're saying sometimes the jury decides whether he had a reasonable alternative or not, or whether the judge always decides it based on the facts in the light most favorable to the defense, and the only thing the jury would decide are factual disputes. Do you have a position on that? Yes, Your Honor, and I see that I'm out of time. May I answer the question? Please. The government's position would be that the court can apply the four-element test to the facts to determine whether accepting the defendant's version of the events as true, would there be evidence for the jury to consider whether that was reasonable, whether the defendant could meet those four elements. But if the district court looks at that and says there's no evidence that would support a specific threat that would meet the rigors of the law, or reasonable alternatives, which of course there are numerous cases that say if the defendant's able to call the police as a matter of law, that's not objectively reasonable. So in that instance, Your Honor, it would be the district court would be properly exercising its function by applying what the law is to the facts, and only if there's facts that would call into question, that would show that the justification defense would be available, that would be when the jury would be able to do it. But if there's no facts that would support it. I'm still, is there just a yes or no answer to the question whether reasonableness is ever a question for the jury on the government's view? The government's meant that there would, yes, Your Honor, that the jury could look at reasonableness if there's sufficient evidence to be presented to them to decide the question. Okay, thank you for your argument. Thank you, Your Honor. Anson, we'll hear from you in rebuttal. Thank you, Your Honor. The court noted that the transcript, or Mr. Duffy did, that the transcript is the only evidence of the district court's ruling. It's also important to keep in mind that is the only record upon which the district court could enter this ruling. So anything that came in at sentencing or that the parties may understand later on is not relevant to the question that was before the district court when it ruled on the justification defense. That's important when you consider certain things that Mr. Duffy has argued. The point the government has raised is that Mr. Still could have closed the door, ended the encounter, either before or after the shooting. The problem behind that is if you look at page 4 of the transcript of the hearing, Mr. Still's position was that these individuals had violently kicked open his door to breach the apartment. Again, we have to accept his version of events as true at this point. The other problem is that where Mr. Tyson retreated to, it was an incomplete retreat, was to a rock bed about one foot outside the main apartment door, which was very close to Mr. Still's open door. That's evidenced by the fact that Mr. Tyson was lobbing large rocks into Mr. Still's apartment. So everything was happening in very close proximity. There's also no evidence either way where the other two individuals went after the shooting. There is evidence, Mr. Still proffered, that Mr. Woodruff had tried to get behind him before the shooting. We don't know where Mr. Woodruff was at the time of the shooting or afterwards. So for those reasons, we'd ask the court to reverse the district court and remand for a new trial. Failing that, remand for resentencing. Thank you. All right, very well. Thank you both, counsel, for your arguments. The case is submitted. The court will file a decision in due course.